## Case No. 4,709.

### FAY et al. v. MONTGOMERY.

[1 Curt. 266.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1852.

CURTIS, Circuit Justice. This is a libel in the admiralty, filed by Richard S. Fay

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

and Charles B. Fessenden, as owners of the ship Admittance, against John B. Montgomery, a captain in the navy of the United States. The original libel states, that on the 24th of June, 1846, the owners of the Admittance, which was a registered vessel of the United States, chartered her to certain persons doing business in New Orleans, under the firm of Wyllie & Egand, for a voyage from New Orleans to San Blas, with a proviso, that if, upon the arrival of the vessel off the port of San Blas, that port should be blockaded, or the discharge of the cargo would ·be otherwise prevented, the vessel should proceed to the Sandwich Islands, and there remain, until the port of San Blas should be opened; but that it ·was not the intention of either of the parties that the vessel should enter or trade with any port in the possession of the Mexican government, unless peace had been previously declared; and that the master was instructed to ascertain, when he got into the Pacific ocean, and near the coast of Mexico, whether the war between the United States and Mexico continued; and if it did, and San Blas was not in the possession of the forces of the United States, to proceed to the Sandwich Islands. The libel further states, that, at Valparaiso, the master was informed that the whole coast of California was in possession of the forces of the United States, but on arriving off San Blas, he learned that the war continued, and that port was in possession of the Mexicans; but that the port of San José was in the possession of the forces of the United States, and being in want of wood and water, he proceeded thither. It then goes on to detail some facts tending to show that master did not design to trade with the enemy, and states, that while lying at San José, the sloop of war Portsmouth, commanded by the respondent, arrived, and, without any probable cause, the respondent took forcible possession of the Admittance, and has ever since retained the same; that he did not send the Admittance to the United States for trial, as he might easily and safely have done, and thereby converted the vessel and cargo to his own use; and they pray for a decree, adjudging the defendant to pay the value of the vessel and freight, and other damages. An amended libel was filed, substantially like the original libel, save that it avers that no proceedings have been instituted against the said vessel in any court of admiralty, and it prays that the respondent may be ordered to proceed to condemnation of the vessel as prize, in some proper court, within a fixed time; and that, in default thereof, restitution may be decreed in this suit. The answer of the respondent, after stating that the Admittance and her cargo were captured as prize of war, and propounding certain causes therefor, which are not necessary to be stated in this connection, avers

that it was impossible for the respondent, consistently with the public interest committed to his direction, to have sent the Admittance from San José to any port in the United States; but that the ship was carried into the port of Monterey, where a libel was filed against the vessel and cargo in the United States court of admiralty for California, by which court they were condemned as prize. Proofs having been taken, the cause has been heard upon the question, whether the respondent has so conducted, in reference to this vessel, as to forfeit his rights as captor, and render himself liable to a decree for restitution in this suit. No question is made concerning the other alternative prayed for in the amended libel, because, since it was filed, the captors have instituted prize proceedings in the district court for the district of Columbia, in obedience to a decree of the supreme court of the United States, made in a suit instituted by the owners of the cargo, and carried to the supreme court by appeal.

The grounds upon which restitution is claimed, in this case, are thus stated in the libel: "That such seizure and detention were without any legal, justifiable, reasonable, or probable cause, and without the pretence of any; and that the said Montgomery, in committing the same, was guilty of an act of illegal violence; and even if there had been probable cause for the seizure of the said vessel, the said Montgomery was legally bound to send the same to the United States for trial, which might easily and safely have been done, but which the said Montgomery illegally and unjustifiably omitted to do, and thereby illegally converted the same to his own use." Here are two distinct grounds; the first being that the seizure was an act of illegal violence, and the second, that by not sending the vessel to the United States for trial, the respondent illegally converted it to his own use. In respect to the first, it is certainly true, that it is not enough for the respondent to set up as a defence, that the vessel was captured as prize of war, to bar a libel filed on the instance side of the court for a marine tort in seizing the vessel. He must also make it appear that there is really a question of prize or no prize to be tried. Glass v. The Betsy, 3 Dall. [3 U. S.] 6; Talbot v. Jansen, Id. 133; Del Col v. Arnold, Id. 333; Maley v. Shattuck, 3 Cranch [7 U. S.] 458; Jennings v. Carson, 4 Cranch [8 U. S.] 2; The Anna-Maria, 2 Wheat. [15 U. S.] 327. But when it appears there is such a question to be tried, the correct practice, as settled by the case of Jecker v. Montgomery, 13 How. [54 U. S.] 498, is, to order the captors to proceed to condemnation. This course preserves the rights of all parties, because, upon such proceeding, by the captor, the prize court may not only award restitution, but decree such damages as may be justly due to the claimant. In this case, the facts being conceded that the Ports-

mouth was a public armed vessel of the navy of the United States; that the respondent was the commander of that vessel; that the Admittance, a registered vessel of the United States, was found by the respondent in a port of Mexico, then at war with the United States, and was there seized by him as prize of war, under such circumstances as repel the idea of a mere naked tort, it does appear that there is a question of prize to be tried, by proper proceedings on that side of the court, unless the respondent has forfeited his rights as captor; and this brings me to consider the other ground stated in the libel, that by his omission to send the vessel to the United States for trial, the respondent illegally converted the vessel to his own use. That captors may so conduct towards prize property, as to forfeit their rights as captors, and render themselves liable to make restitution, either with or without damages, is clear. The general proposition, that such restitution and damages may be decreed upon the instance side of the court, on a libel like the present, or, as the practice is in England, upon a monition to the captors to show cause, is equally clear. A case may be made, upon which it would be the duty of the court to declare, that it will not adjudicate upon the validity of the capture. But before the court can so declare, a case of forfeiture of rights, free from all reasonable doubt, must be made out. It is a circumstance of some significance to my mind, that while the general principle, "that a bonâ fide possessor may, by subsequent misconduct, forfeit the protection of his fair title, and render himself liable to be considered a trespasser," has been often laid down, there is no case in the books, within my knowledge, in which restitution has been decreed on this ground, on the instance side of the court, against the will of the captor. There are cases of restitution decreed on monition; but no case, which I have seen, proceeded upon a forfeiture of rights once acquired, and asserted and relied on, by the captors. In The Corier Maratimo, 1 C. Rob. Adm. 287, the captors, upon monition, consented to restitution. In The Acteon, 2 Dod. 48, the captors did not contend against restitution; and the only question made was as to damages and costs. And in these, as well as many other cases, the decree of restitution rested, not upon a forfeiture of rights, but upon defects in the original title.

In considering this part of the case, the question is, whether the allegation in the libel, that the respondent omitted to send the vessel to the United States for trial, when he could safely and properly have done so, and thereby illegally converted the property to his own use, is made out in proof. The answer of the respondent to this part of the libel states, "that it was impossible for him, consistently with the public interests committed to his direction, to have sent the

said ship Admittance to any port in the United States." It is objected that this is not such an allegation as entitles the respondent to exhibit proofs; that it is too vague to be sufficient for that, or any purpose. That the allegation is extremely loose and general, and, upon an exception, would have been stricken out, or ordered to be made more specific, must be admitted. But no exception was made to it; both parties proceeded to take their proofs, and it is admitted at the bar, that the libellants have not been surprised or misled. Besides, the propriety of allowing the respondent to exhibit proofs upon the question of his ability to send the vessel to the United States for trial, can hardly be doubted, when it is borne in mind that the libel rests upon an allegation that he could easily and safely have done so, and claims restitution upon the ground of a forfeiture of legal rights, by illegal neglect to do so.

Before considering the facts, upon which the forfeiture is asserted, one principle should be stated, which is entitled to an important effect on this part of the case. It is, that an honest exercise of the discretion necessarily arising out of his command, cannot be treated as such misconduct, in the commander of a public ship of war, as will forfeit the protection of his fair title, and render him liable to be treated as a trespasser. This principle is too obviously just, to require the support of authority; but it will be found to have been laid down and applied in the case of Wilkes v. Dinsman, 7 How. [48 U. S.] 89, and Dinsman v. Wilkes, 12 How. [53 U. S.] 390.

Now, it must be admitted, that the question, whether the necessities of the public service will allow the commander of a ship of war, in time of war, upon a remote station, on the other side of the globe, to spare one of his officers to go home in command of a prize, is one depending on his discretion necessarily arising out of his command. In the first instance, he alone has the power to decide this question; he alone has the needful knowledge of facts, and he is bound to exercise his judgment upon them. Certainly his judgment is not conclusive. Good faith and reasonable discretion are requisite; but it would be not only a hardship, but an injustice, to impose on the commander the duty of determining such a question, and when he has determined it, according to his best judgment, to attribute to him, as an act of misconduct, that he did not come to a different conclusion. On the contrary, I think, that while no clear and known duty is violated by him, all fair presumptions should be made in his favor. It is true, that it is a clear duty of a commander to send in his prize for adjudication; but this is not an absolute obligation. It depends upon his ability to perform it, and of this, as already said, he must judge in the first instance; and if he decides with reasonable discretion,

and with an honest purpose to do his duty to all concerned, I cannot consider him guilty of misconduct, which works a forfeiture. Keeping these principles in view, I am not satisfied that in omitting to send the vessel to the United States, Captain Montgomery violated any known duty, or acted with so little discretion, as to render himself liable as a trespasser. This question has been before the supreme court of the United States, in the case of Jecker v. Montgomery [supra], and unless this case can be distinguished from that upon its facts, I must, of course, come to the same conclusion there arrived at. In that case, the allegation in the answer of the respondent, that he could not send the vessel to the United States for trial, with a due regard to the public interest, was admitted by the demurrer. In this case it is traversed, and the parties have gone into proofs. This is the principal difference between the two cases.

These proofs satisfy my mind that the necessary stores and supplies for a voyage to the United States were either on board the Admittance, or could have been obtained at Monterey. I am also convinced, that the crew were willing to continue on board and work the vessel home, under the command of Lieutenant Revere; so that no men for a prize crew need have been taken from the Portsmouth. For although, in general, the captor must man, as well as officer, a prize, even when it is a neutral, or belongs to citizens, yet this obligation results from the want of a right to subject the prize crew to the command of his own officer; and when the prize crew are willing to engage to serve under the command of the prize-master, and are neutrals, or citizens, no prize crew need be put on board. The Eleanor, 2 Wheat. [15 U. S.] 361. Lieutenant Revere says the crew of the Admittance all volunteered to serve under his command, and bring the vessel home; and although it does not appear that Captain Montgomery was informed of this, yet I am strongly inclined to think, that if this had been the only obstacle, it would have been his duty to have made inquiry, which would have apprised him of the fact. But this was not the only obstacle. One of the lieutenants of the Portsmouth was serving on shore; two only remained; and it does not appear that a single passed midshipman was on board. Lieutenant Revere has given an opinion, no doubt an honest one, that he might have been spared; but it is an opinion formed under no responsibility of command; and I am not prepared to say, that a sloop of war, on that coast, at that time, officered by only two lieutenants, ought to have been left with only one, in order to send home a prize; and still less, that the commander erred so grossly in not detaching this officer, on such service, as to forfeit his legal rights thereby. In respect to the proceedings at Monterey, it has been declared by the supreme court, in the case already referred to,

that they afforded reasonable ground for the belief, which the respondent, in his answers, swears he entertained, that no further proceedings were necessary. Indeed, it may well be doubted, after what was said by Sir William Scott, in The Maria, 1 C. Rob. Adm. 376, whether mere delay is of itself a cause of forfeiture; because the claimant has it in his power, at all times, to compel the captor to proceed, and the use of this power is so far a duty on his part, that his omission for six years to resort to it, was held to be a bar to a monition in The Susanna, 6 C. Rob. Adm. 48. And the difficulty of awarding restitution against this officer, by reason of delay, would be much increased by the fact, that the government has taken the proceeds of the property, and he has never had them in his own hands. In a regular prize proceeding, where the claimant made out a title to restitution, upon the ground that the capture was illegal, Lord Stowell manifested the utmost reluctance to award restitution against the captor, after the government had received the proceeds of the prize. The San Juan Nepomuceno, 1 Hagg. Adm. 269. I do not think that the executive government of the United States can turn a bad title into a good one, by a recognition of the possession of one of its officers; but if the possession was under a lawful title, and the question be, whether the officer has been guilty of such delay as works a forfeiture, it is a circumstance of no trifling weight, that the executive government has received from him the property, and itself retained it.

After a careful examination of this case, I have come to the conclusion, that I ought not to make a decree for restitution in this suit; and I rest in this conclusion with the more satisfaction, because, in the prize proceeding now pending, all the substantial rights of the libellants will be ascertained and determined. I observe that the decree of the district court purports, on its face, to be made by consent. I have great doubt concerning the jurisdiction of this court in such a case. The only power conferred on this court by congress, in suits in admiralty, is as an appellate court. But if decrees are made by consent in the district court, without a hearing, it becomes, in effect, a court of original jurisdiction. The act of congress directs this court to pass such sentence or decree as the district court ought to have passed; but if the parties consented to a decree, there can be no room to question its correctness. The rule of the court requires reasons for the appeal to be stated. In this case, the reason assigned is, that the district court ought to have decreed for the libellant; but the record shows that the decree was in accordance with the consent of the libellant, which removes all error.

Subsequently, it was stated to the court, that the record of the district court was not correct in stating the decree to have been by consent; that it had been amended; and the amendment certified to this court; and that it was agreed that the record here should be changed, so as to conform to the truth; and this having been done, a decree was entered, ordering the captors to prosecute, as against the vessel, the prize proceedings already instituted in the circuit court for the District of Columbia.